<u>**TABLE OF CONTENTS**</u>

<u>**Exhibits to Request for Judicial Notice**</u>

| <u>**Exhibit No:**</u> | <u>**Pages**</u> |
| --- | --- |
| Exhibit A | 1-24 |
| Exhibit B | 25-29 |
| Exhibit C | 30-58 |

# EXHIBIT A

Exhibit A
000001

3

FIDELITY NATIONAL TITLE COMPANY
SUBDIVISION DEPARTMENT

OR # 9833858-kc

Recording Requested By:
T. DUFFY

**6747**

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

Fil
23P

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
LETICIA REED

DOC #   2006-0476641

JUL 06, 2006   11:36 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:        75.00
PAGES:        23        DA:      1

2006-0476641

—————— [Space Above This Line For Recording Data] ——————

13379                                    00013670438706006
[Escrow/Closing #]                       [Doc ID #]

# DEED OF TRUST

MIN 1000157-0006984217-3

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.

**(A) "Security Instrument"** means this document, which is dated JUNE 23, 2006          , together
with all Riders to this document.

**(B) "Borrower"** is

HILARIO GONZALES, AND DAWN MELKUS-GONZALES, HUSBAND AND WIFE AS COMMUNITY
PROPERTY WITH RIGHTS OF          SURVIVORSHIP

**CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Page 1 of 16

⬭ -6A(CA) (0207)    CHL (08/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291          Form 3005  1/01
CONV/VA

* 2 3 9 9 1 *                         * 1 3 6 7 0 4 3 8 7 0 0 0 0 0 1 0 0 6 A *

SAN DIEGO,CA                          Page 1 of 23                    Printed on 9/23/2011 2:52:21 PM
Document: TD 2006.476641

Exhibit A
000002

**6748**

DOC ID #: 00013670438706006

Borrower's address is
1043 CARRYLL PARK COURT, FALLBROOK, CA 92028
Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
AMERICA'S WHOLESALE LENDER
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
**(D) "Trustee"** is
CTC REAL ESTATE SERVICES
400 COUNTRYWIDE WAY, MSN SV-88, SIMI VALLEY, CA 93065 , ,
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated   JUNE 23, 2006          . The Note states that Borrower owes Lender
ONE MILLION and 00/100

Dollars (U.S. $ 1,000,000.00     ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   JULY 01, 2036        .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

(VMP) -6A(CA) (0207)       CHL (08/05)          Page 2 of 16                    Form 3005  1/01

Exhibit A
000003

6749

DOC ID #: 0001367043870606006

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                     of              SAN DIEGO                :
[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 126-490-07                          which currently has the address of

30945 CUVAISON, BONSALL
[Street/City]

California      92003      ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

(VMP) -6A(CA) (0207)     CHL (08/05)          Page 3 of 16                    Form 3005 1/01

Exhibit A
000004

**6750**

DOC ID #: 00013670438706006

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender
including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the
right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of
record. Borrower warrants and will defend generally the title to the Property against all claims and demands,
subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform
covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real
property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower
shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment
charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to
Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency.
However, if any check or other instrument received by Lender as payment under the Note or this Security
Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under
the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:
(a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any
such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or
entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such
other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender
may return any payment or partial payment if the payment or partial payments are insufficient to bring the
Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current,
without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in
the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each
Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied
funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If
Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return
them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under
the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future
against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument
or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments
accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the
Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to
each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to
late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal
balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a
sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the
late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from
Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in
full. To the extent that any excess exists after the payment is applied to the full payment of one or more
Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be
applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the
Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**VMP** -6A(CA) (0207)          CHL (08/05)              Page 4 of 16                        Form 3005  1/01

Exhibit A
000005

Case 3:19-cv-00050-BAS-AGS   Document 5-5   Filed 03/21/19   PageID.76   Page 7 of 59

**6751**

DOC ID #: 00013670438706006

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

-6A(CA) (0207)          CHL (08/05)          Page 5 of 16                    Form 3005  1/01

Exhibit A
000006

6752

DOC ID #: 0001367043870606

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

VMP -6A(CA) (0207)          CHL (08/05)          Page 6 of 16          Form 3005 1/01

Exhibit A
000007

**6753**

DOC ID #: 0001367043870606

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

-6A(CA) (0207)        CHL (08/05)            Page 7 of 18                          Form 3005 1/01

Exhibit A
000008

6754

DOC ID #: 00013670438706006

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

-6A(CA) (0207)          CHL (08/05)               Page 8 of 16                              Form 3005 1/01

Exhibit A
000009

6755

DOC ID #: 00013670438706006

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

Exhibit A
000010

6756

DOC ID #: 00013670438706006

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

VMP® -6A(CA) (0207)     CHL (08/05)          Page 10 of 16                Form 3005 1/01

Exhibit A
000011

6757

DOC ID #: 00013670438706006

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

| | | | |
|---|---|---|---|
| VMP -6A(CA) (0207) | CHL (08/05) | Page 11 of 16 | Form 3005 1/01 |

Exhibit A
000012

**6758**

DOC ID #: 00013670438706006

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

Exhibit A
000013

**6759**

DOC ID #: 0001367043870600 6

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

[VMP] -6A(CA) (0207)          CHL (08/05)          Page 13 of 16          Form 3005   1/01

Exhibit A
000014

6760

DOC ID #: 00013670438706006

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

-6A(CA) (0207)          CHL (08/05)          Page 14 of 16          Form 3005 1/01

Exhibit A
000015

6761

DOC ID #: 00013670438706006

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
HILARIO GONZALES                                              -Borrower

_____ (Seal)
DAWN MELKUS-GONZALES                                -Borrower

_____ (Seal)
                                                                         -Borrower

_____ (Seal)
                                                                         -Borrower

-6A(CA) (0207)        CHL (08/05)           Page 15 of 16                    Form 3005  1/01

Exhibit A
000016

6762

State of California
County of San Diego } ss.

On 6-23-06 before me, Sammy M. Cobb, Notary Public
personally appeared
Hilario Gonzales & Dawn Nettles-Gonzales

————————————————————————————— , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)



SAMMY M. COBB
COMM. # 1405889
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
COMM. EXP. MARCH 17, 2007

DOC ID #: 00013670438706006

-6A(CA) (0207)        CHL (08/05)        Page 16 of 16                    Form 3005 1/01

Exhibit A
000017

EXHIBIT "A"

Order No. 9833858

**6763**

PARCEL 1:

LOT 33 OF  COUNTY OF SAN DIEGO TRACT NO. 5037-3, ACCORDING TO MAP
THEREOF NO. 14899, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO
COUNTY NOVEMBER 3, 2004.

PARCEL 2:

EASEMENTS AND RIGHTS FOR THE BENEFIT OF GRANTEE AS SET FORTH IN THE
DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS RECORDED
DECEMBER 12, 2001 AS INSTRUMENT NO. 2001-0912649, AND SUPPLEMENTARY
DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS RECORDED MARCH
29, 2005 AS INSTRUMENT NO. 2005-0252122, BOTH OF OFFICIAL RECORDS.

2

(Rev. 11/17/04)

Exhibit A
000018

6764

# ADJUSTABLE RATE RIDER

### (PayOption MTA Twelve Month Average Index - Payment Caps)

|         13379         |    00013670438706006    |
| [Escrow/Closing #]    |    [Doc ID #]           |

THIS ADJUSTABLE RATE RIDER is made this  TWENTY-THIRD       day of
JUNE, 2006            , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
AMERICA'S WHOLESALE LENDER

("Lender") of the same date and covering the property described in the Security Instrument and
located at:

30945 CUVAISON
BONSALL, CA 92003
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE
MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY
PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD
BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE
MAXIMUM LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for changes in the interest rate and the monthly payments, as follows:

* **PayOption MTA ARM Rider**
**1E310-XX (09/05)(d)**                          Page 1 of 6





Exhibit A
000019

**6765**

DOC ID #: 0001367043870

**2. INTEREST**

    **(A)  Interest Rate**
    Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Up until the first day of the calendar month that immediately precedes the first monthly payment due date set forth in Section 3 of the Note, I will pay interest at a yearly rate of    7.875 %. Additional days interest collected prior to the first monthly payment due date is sometimes called "Per Diem" interest and is due at the time I close my loan. Thereafter until the first Interest Rate Change Date, defined below in Section 2(B), I will pay interest at a yearly rate of    1.750 %. This rate is sometimes referred to as the "Start Rate" and is used to calculate the initial monthly payment described in Section 3. The interest rate required by this Section 2 of the Note is the rate I will pay both before and after any default described in Section 7(B) of the Note.

    **(B) Interest Rate Change Dates**
    The interest rate I will pay may change on the first        day of AUGUST, 2006     , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

    **(C) Index**
    Beginning with the first Interst Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".
    If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

    **(D) Calculation of Interest Rate Changes**
    Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding     THREE & 575/1000 percentage point(s) (    3.575 %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than    9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

**3. PAYMENTS**

    **(A) Time and Place of Payments**
    I will make a payment every month.

● PayOption MTA ARM Rider
**1E310-XX (09/05)**                Page 2 of 6

Exhibit A
000020

**6766**

DOC ID #: 00013670438706006

I will make my monthly payments on the FIRST                day of each month beginning on August, 2006              . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under the Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JULY 01, 2036            , I still owe amounts under the Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 3,572.43                      , unless adjusted under Section 3 (F).

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the first            day of AUGUST, 2007              , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.500% of my prior monthly payment. This 7.500% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075 . The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment.

• PayOption MTA ARM Rider
1E310-XX (09/05)                     Page 3 of 6

Exhibit A
000021

6767

DOC ID #: 00013670438706006

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN percent (        115 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**

On the tenth           Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional payment options that are **greater** than the Minimum Payment, which are called "Payment Options." The Payment Options are calculated using the new interest rate in accordance with Section 2(D). I may be given the following Payment Options:

(i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) **Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

**• PayOption MTA ARM Rider**
**1E310-XX (09/05)**                    Page 4 of 6

Exhibit A
000022

6768

DOC ID #: 00013670438706006

    (iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

    Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

    **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

    To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

    If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by

● **PayOption MTA ARM Rider**
**1E310-XX (09/05)**           Page 5 of 6

Exhibit A
000023

6769

DOC ID #: 00013670438706006

this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period,
Lender may invoke any remedies permitted by this Security Instrument without further notice or
demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in
this Adjustable Rate Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____
HILARIO GONZALES                                          -Borrower

_____
DAWN MELKUS-GONZALES                                      -Borrower

_____
                                                          -Borrower

_____
                                                          -Borrower

**• PayOption MTA ARM Rider**
**1E310-XX (09/05)**                    Page 6 of 6

Exhibit A
000024

# EXHIBIT B

Exhibit B
000025

Branch :WRC,User :3027                    Comment:                                    Station Id :LZI9

**DOC# 2016-0656132**

Nov 30, 2016  03:40 PM
OFFICIAL RECORDS
Ernest J. Dronenburg, Jr.,
SAN DIEGO COUNTY RECORDER
FEES:  $27.00

PAGES: 4

RECORDING REQUESTED BY:
        ServiceLink
WHEN RECORDED MAIL TO:

Clear Recon Corp.
4375 Jutland Drive Suite 200
San Diego, California 92117
866-931-0036

T.S. No.: 048253-CA
APN: 126-490-07-00                        SPACE ABOVE THIS LINE FOR RECORDER'S USE
Property Address: 30945 CUVAISON,         Title Order No.: 160271992-CA-VOI
BONSALL, CA 92003

## NOTICE OF DEFAULT

**Pursuant to CA Civil Code 2923.3**
**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT
ATTACHED**
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA
NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG
TÀI LIỆU NÀY

### IMPORTANT NOTICE

IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE
BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY
COURT ACTION,
and you may have legal right to bring your account in good standing by paying all of your
past due payments plus permitted costs and expenses within the time permitted by law for
reinstatement of your account, which is normally five business days prior to the date set for
the sale of your property. No sale date may be set until approximately 90 days from the
date this notice of default may be recorded (which date of recordation appears on this
notice).

This amount is $646,252.47 as of 11/28/2016, and will increase until your account becomes
current.  While your property is in foreclosure, you still must pay other obligations (such as
insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to
make future payments on the loan, pay taxes on the property, provide insurance on the
property, or pay other obligations as required in the note and deed of trust or mortgage, the

Page 1 of 3

CRC NOD 09122014

Exhibit B
000026

Branch :WRC,User :3027                    Comment:                                          Station Id :LZI9

Trustee Sale No.: 048253-CA  Title Order No.: 160271992-CA-VOI

beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE (CWALT 2006-OA12)
C/O Clear Recon Corp.
4375 Jutland Drive Suite 200
San Diego, California 92117
Phone: 858-750-7600

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.  Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN:  CLEAR RECON CORP. is either the original trustee, the duly appointed substituted trustee or the designated agent of the holder of the beneficial interest under a deed of trust dated 6/23/2006, executed by HILARIO GONZALEZ, AND DAWN MELKUS-GONZALEZ, HUSBAND AND WIFE AS COMMUNITY PROPERTY WITH RIGHTS OF SURVIVORSHIP, as Trustor, to secure certain obligations in favor of the beneficiary thereunder, recorded 7/6/2006, as Instrument No. 2006-0476641, of Official Records in the Office of the Recorder of  San Diego County, California, encumbering the land as fully described on said Deed of Trust

Page 2 of 3

CRC NOD 09122014

Exhibit B
000027

Branch :WRC,User :3027                    Comment:                                        Station Id :LZI9

Trustee Sale No.: **048253-CA**  Title Order No.: **160271992-CA-VOI**

That a breach of, and default in, the obligations for which such Deed of Trust is security
has occurred in that payment has not been made of:

Installment of Principal and Interest plus impounds and/or advances which became due on
7/1/2009 plus late charges, and all subsequent installments of principal, interest, balloon
payments, plus impounds and/or advances and late charges that become payable.

That by reason thereof, **THE BANK OF NEW YORK MELLON FKA THE BANK OF
NEW YORK, AS TRUSTEE (CWALT 2006-OA12)**, the present beneficiary under such
Deed of Trust has deposited with said trustee such Deed of Trust and all documents
evidencing obligations secured thereby and has declared and does hereby declare all sums
secured thereby immediately due and payable and has elected and does hereby elect to
cause the trust property to be sold to satisfy the obligations secured thereby.

**CLEAR RECON CORP.**

Date Executed: _11/28/16_     BY: _____

_EDWARD JALATR_ , Authorized Signor

**CLEAR RECON CORP.**
**4375 Jutland Drive Suite 200**
**San Diego, California 92117**

Page 3 of 3

CRC NOD 09122014

Exhibit B
000028

Branch :WRC,User :3027                              Comment:                                    Station Id :LZI9

### Declaration of Mortgage Servicer Pursuant to
### Civil Code §2923.55(c)

Borrower(s):  HILARIO GONZALES, DAWN MELKUS-GONZALES
Mortgage Servicer: Bayview Loan Servicing, LLC
Property Address: 30945 CUVAISON BONSALL, CA 92003
Loan No.:  1108218
T.S. No.:

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. ☒ The mortgage servicer has contacted the borrower pursuant to California Civil Code § 2923.55(b) (2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have; passed since the initial contact was made.

2. ☐ The mortgage servicer has tried with due diligence to contact the borrower(s) as required by California Civil Code § 2923.55(f) (1) and § 2923.55(f) (3)-(5). The telephone contact requirements under § 2923.55(f) (2) were not attempted pursuant to the borrower's previously request for cease communication. No contact has been made despite such due diligence. The due diligence efforts were satisfied on _____.

3. ☐ Despite the exercise of due diligence pursuant to California Civil Code § 2923.55(f), the Mortgage servicer has been unable to contact the borrower to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

4. ☐ No contact was required by the mortgage servicer because the individual(s) did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

5. ☐ The requirements of Cal. Civil Code § 2923.55 do not apply because the loan is not secured by a first lien mortgage or first deed of trust that secures a loan, or that encumbers real property, described in Civil Code § 2924.15(a).

6. ☐ The requirements of Cal. Civil Code § 2923.55 do not apply because:

    a._____ The secured property is non-owner occupied.

    b._____ The secured property is commercial or vacant land.

    c._____ The secured property is exempt from due diligence, the borrower is deceased.

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

                                            Bayview Loan Servicing, LLC

Dated: 11/16/2016                          By: _____

                                            GREGORY HARRISON
                                            State Declaration Processor Loss Mitigation - QA

SAN DIEGO,CA                           Page 4 of 4              Printed on 6/26/2017 11:30:01 AM
Document: ND 2016.656132

Exhibit B
000029

# EXHIBIT C

Exhibit C
000030

1  Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
   **THE LAW OFFICES OF JOSEPH R. MANNING, JR.**
2  **A PROFESSIONAL CORPORATION**
   4667 MacArthur Blvd., Suite 150
3  Newport Beach, CA 92660
   (949) 200-8755 Phone
4  (866) 843-8308 Fax
   info@manninglawoffice.com
5
   Attorneys for Plaintiff HILARIO GONZALES
6

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**07/06/2017** at 01:04:05 PM
Clerk of the Superior Court
By Ivana Salas, Deputy Clerk

7

8                    SUPERIOR COURT OF CALIFORNIA

9       IN AND FOR THE COUNTY OF SAN DIEGO- NORTH COUNTY REGIONAL CENTER

10  HILARIO GONZALES,                    Case No.:   37-2017-00024546-CU-OR-NC

11          Plaintiff,                   **COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF:**

12  v.

13  BAYVIEW LOAN SERVICING,              **1. VIOLATIONS OF CAL. CIVIL CODE § 2923.55**
    LLC, a business entity form unknown; **2. VIOLATIONS OF CAL. CIVIL CODE § 2923.6**
14  CLEAR RECON CORP., a business        **3. VIOLATION OF CALIFORNIA BUSINESS &**
    entity form unknown, and DOES 1-         **PROFESSIONS CODE §17200**
15  100, inclusive,                      **4. NEGLIGENCE**

16          Defendants.

17                                       **DEMAND FOR JURY TRIAL**

18

19

20

21          Plaintiff Hilario Gonzales, by his attorney, for causes of action against Defendants

22  BAYVIEW LOAN SERVICING, LLC and CLEAR RECON CORP. and DOES 1-100 (hereinafter

23  collectively referred to as "Defendants"), alleges the following on information and belief:

24                                        **I.**

25                                     **PARTIES**

26  1.  Plaintiff Hilario Gonzales is an individual and resident of the State of California, County of San

27      Diego. At all times relevant herein, Plaintiff owns and resides in the subject real property,

28      commonly known as **30945 Cuvaison, Bonsall, CA 92003** (the "Property").

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

_____
            **COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
                                1

Exhibit C
000031

2. Defendant Bayview Loan Servicing, LLC ("Bayview") is a business organization of unknown form doing business in the County of San Diego, State of California.

3. Defendant Clear Recon Corp. ("Clear Recon") is a business organization of unknown form doing business in the County of San Diego, State of California.

4. The true names and capacities of Defendants named herein as DOES 1 through 100 are unknown to Plaintiff, who therefore sues these Defendants by such fictitious names.  Plaintiff will amend the Complaint to show the true names and capacities of such DOES when they have been ascertained.  Upon information and belief, Plaintiff alleges that each of DOES 1 through 100 was responsible in some manner for the occurrences, acts, and transactions herein alleged, and that Plaintiff's damages and violations of Plaintiff's rights were proximately caused by such Defendants.

5. Upon information and belief, Plaintiff alleges that at all times mentioned Defendants were the agents, servants, representatives, partners and/or employees of co-Defendants, and, by engaging in the actions mentioned below, were, unless otherwise alleged, acting within the course and scope of their authority as such agent, servant, representative, partner, and/or employee, with the permission and consent of co-Defendants.

6. Any allegations about acts of any corporate or other business Defendants means that the corporation or other business did the alleged acts through its officers, directors, employees, agents, and/or representatives, while they were acting within the actual or ostensible scope of their authority.

## II.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction over the causes of action alleged in this Complaint because this Court is a court of general subject-matter jurisdiction and is not otherwise excluded from exercising subject-matter jurisdiction over said causes of action.

8. This Court has subject-matter jurisdiction over the causes of action alleged in this Complaint pursuant to California Code of Civil Procedure ("CCP") §§ 392 and 395 because the dispute

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
2

Exhibit C
000032

1  arises over real property, the Property, that is located in the County of San Diego, and because

2  Plaintiff's injury and damages occurred in this jurisdictional area.

3  9.  This Court has personal jurisdiction over the parties, pursuant to CCP § 410.10.  Plaintiff was, at

4  all times relevant herein, a resident of the County of San Diego, State of California.  Defendants

5  have subjected themselves to this Court's jurisdiction because of their contact with this County

6  by virtue of encumbering and claiming an interest to the real property, the Property, located in

7  this County, and because each Defendant resides in, is incorporated in, has its main place of

8  business in and/or conducts business in the State of California, and a substantial portion of the

9  acts, omissions, events, and transactions constituting the causes of action alleged herein

10  occurred within the County of San Diego, State of California.

11  10.  This Court is the appropriate venue for this action under CCP §§ 395 and 395.5 because the

12  actions that give rise to the causes of action alleged in this Complaint occurred in this County,

13  and the Property is located in this County.  Plaintiff hereby designates the County of San Diego

14  as the place of proper venue.

### III.

### DEMAND FOR JURY TRIAL

17  11.  Plaintiff hereby respectfully requests a trial by jury on all appropriate issues raised in this

18  Complaint.

### IV.

### CALIFORNIA HOMEOWNER'S BILL OF RIGHTS

21  12.  In response to mortgage servicer improprieties and the growing number of foreclosures, 49 state

22  attorneys general served suit against the country's five major mortgage servicers.  As a

23  consequence, these mortgage servicers agreed to enter into consent judgments known as the

24  National Mortgage Settlement ("NMS").  The NMS imposed new servicing standards on these

25  servicers.  Thereafter, the California Legislature passed the Homeowner's Bill of Rights

26  ("HBOR") to give borrowers a private right of action to enforce these protections in court and to

27  apply these requirements to all mortgage servicers, not just the five NMS signatories.

28

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

3

Exhibit C
000033

13. The HBOR is codified in Civil Code §§ 2920.5, 2923.4, 2923.5, 2923.55, 2923.6, 2923.7, 2924, 2924.9, 2924.10, 2924.11, 2924.12, 2924.17, 2924.18 and 2924.19.

14. The purpose of the HBOR is to ensure that, as part of the non-judicial foreclosure process, borrowers are not only considered for, but have a meaningful opportunity to obtain, any available loss mitigation options offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure. Cal. Civ. Code § 2923.4(a).

15. Provisions of the HBOR apply only to mortgages or deeds of trust that are secured by owner-occupied residential real property containing no more than four (4) dwelling units.  For these purposes, "owner-occupied" means that the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes. Cal. Civ. Code § 2924.15.

16. As applied herein, "borrower" means any natural person who is a mortgagor or trustor and who is potentially eligible for any federal, state, or proprietary foreclosure prevention alternative program offered by, or through his or her mortgage servicer. Cal. Civ. Code § 2920.5(c)(1).

17. As applied herein, "foreclosure prevention alternative" means a first lien loan modification or other available loss mitigation option. Cal. Civ. Code § 2920.5(b).

18. The HBOR protects a homeowner who has become a victim of a foreclosure that is being wrongfully advanced. If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17. Cal. Civ. Code § 2924.12(a)(1). The rights, remedies, and procedures provided by [Civil Code Section 2924] are in addition to and independent of any other rights, remedies, or procedures under any other law. Cal. Civ. Code § 2924.12(h).

## V.

### FACTUAL BACKGROUND

### Origination of the Loan and the Property

19. In 2006, Plaintiff entered into a written loan agreement and obtained a mortgage loan, in the amount of $1,000,000.00 (the "Loan"), secured by the Subject Property through a Deed of Trust (recorded July 6, 2006), then and now the principal residence of Plaintiff.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

4

Exhibit C
000034

20. The Property contains no more than four dwelling units and is owner-occupied.  The Property is, and was at all times relevant herein, Plaintiff's principal residence and is security for the Loan, which was made for personal, family, or household purposes. At all relevant times, Plaintiff is a "borrower" as defined by Civil Code § 2920.5(c).

**Plaintiff's Financial Hardship and Pursuit of Foreclosure Prevention Alternatives**

21. Plaintiff performed dutifully under the Loan, as required, until the household income was significantly reduced by a decline in companies that are now dissolved and no longer active. In addition, Plaintiff's wife was diagnosed with Cancer and passed around on July 24, 2016. Due to the decline in income and increase in medical bills, it became difficult for Plaintiff to remain current on the payments.

22. Earnestly wishing to avoid foreclosure and to keep the home, Plaintiff contacted Bayview and requested assistance on his mortgage. As instructed, Plaintiff submitted a financial package to Bayview in order to be reviewed for a loan modification.

23. However on November 30, 2016, , while Plaintiff was in review for a loan modification, Defendants recorded a Notice of Default and Election to Sell Under Deed of Trust (the "Notice of Default") against the Subject Property.  A true and correct copy of the Notice of Default is attached hereto as **Exhibit A**.

24. The NOD contains a false Declaration of Mortgage Servicer Pursuant to Civil Code §2923.55(b)(2)  ("Declaration"), whereby an authorized agent or employee of the mortgage servicer, Bayview, declared that it contacted the borrower pursuant to California Civil Code §2923.55(b)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. Thirty (30) days or more have passed since the initial contact was made." The Declaration is dated November 16, 2016". **(Exhibit A**, p. 4). The Declaration is signed by representative Gregory Harrison- State Declaration Processor Loss Mitigation, whom Plaintiff has had no contact with and who certifies the declaration to be accurate, complete and supported by competent and reliable.

25. This was clearly a false declaration as Plaintiff was in review for a loan modification during the time the Notice of Default Declaration was issued.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

5

Exhibit C
000035

26. Defendant, Bayview, did not contact Plaintiffs, as required by the statute. Plaintiffs were, at all relevant times, "borrowers" as defined by Civil Code § 2920.5.

27. At no point at least 30 days prior to recording the Notice of Default did Bayview contact Plaintiffs, within the meaning of this term and the statutory requirements, in person or by phone in order to assess their financial situation and explore options for them to avoid foreclosure.

28. At no point at least 30 days prior to recording the Notice of Default, and during the initial contact, did Bayview advise Plaintiffs of their right to request a subsequent meeting, which, if requested, would be scheduled within 14 days.

29. At no point at least 30 days prior to recording the Notice of Default, and during such initial contact or a subsequent meeting, did Bayview provide Plaintiffs with the toll-free telephone number made available by the United States Department of Housing and Urban Development ("HUD") to find a HUD-certified housing counseling agency.

30. Plaintiff continued to follow up with Bayview to check status of the loan modification in which Plaintiff would be advised that he was in review and no decision has been made.

31. However, on or around March 8, 2017, while Plaintiff was clearly still in review for a loan modification, Defendants recorded a Notice of Trustee Sale (the "NTS") against the Subject Property. A true and correct copy of the NTS is attached hereto as **Exhibit B**.

32. Thereafter, on or around June 2017, Plaintiff had an increase in his household gross income and resubmitted an updated complete financial package to Bayview via fax.

33. However, Bayview has not provided a response as to the loan modification review and a sale date is scheduled for July 17, 2017 which is a clear violation of California Civil Code section 2923.6.

34. As a result, Plaintiff felt helpless and desperate, and needed assistance to obtain some sort of mortgage assistance from Defendants, as Defendants have violated and continues to violate the Homeowner's Bill of Rights, by failing to fairly evaluate Plaintiff's application for a loan modification and ignoring Plaintiff's submission and proceeding with foreclosure.

35. At this time, Plaintiff is in possession of the Property and no sale has occurred; however, a Trustee's Sale is scheduled for **July 17, 2017.** As a result, the instant action became necessary.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

6

Exhibit C
000036

36. Plaintiff has been unable to cure the default because of the substantial arrearages, which include unnecessary fees added to the Loan balance.

37. The foregoing acts and material omissions of the Defendants alleged herein were undertaken willfully, persistently, intentionally, knowingly, and/or in gross or reckless disregard of Plaintiff's notice and disclosure rights.

38. Defendants, as employers of the authorized representatives who had contact with Plaintiff, had advanced knowledge of the unfitness of the employee representatives and employed such representatives with a conscious disregard of the rights or safety of others, or authorized/ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice.

39. Plaintiff has been harmed by Defendants' failure to provide accurate material disclosures and notice such that Plaintiff can cure the default and extinguish the transaction by operation of law.

40. Defendants are acting in concert to deprive Plaintiff of his civil rights by attempting to take the Property without due process of law.

41. Plaintiff was at all relevant times willing and able to enter into a loss mitigation program that is affordable for Plaintiff and more profitable to Defendants than a foreclosure, and Plaintiff is ready, willing and able to make such payments at the times required of them by law.

## VI.

### FIRST CAUSE OF ACTION

### VIOLATIONS OF CAL. CIVIL CODE §2923.55

### (AS TO ALL DEFENDANTS)

42. Plaintiff re-alleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

43. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent cannot record a notice of default until 30 days after: (i) the mortgage servicer makes "initial contact" with the borrower, as required by Civil Code § 2923.55(b)(2), or (ii) the mortgage servicer satisfies the "due diligence" requirements of Civil Code § 2923.55(f) if unable to contact the borrower.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

7

Exhibit C
000037

44. The notice of default must include a declaration that the mortgage servicer contacted the borrower as required by the statute or, in the alternative, attempted such contact with due diligence, or that contact was not required because the individual did not meet Civil Code § 2920.5's definition of "borrower."

45. Defendants recorded the Notice of Default with a false declaration of compliance with Civil Code § 2923.55. The Declaration attached to the Notice of Default avers that Bayview contacted Plaintiff as required by Civil Code § 2923.55 "tried with due diligence but was unable to discuss the borrowers' financial situation and explore options for the borrower to avoid foreclosure. Thirty (30) days or more have passed since the initial contact was made." The Declaration is dated November 16, 2016". (**Exhibit A**, p. 4). The Declaration is signed by representative Gregory Harrison- State Declaration, Processor Loss Mitigation, whom Plaintiff has had no contact with and who certifies the declaration to be accurate, complete and supported by competent and reliable.

46. Defendant, Bayview, did not contact Plaintiffs, as required by the statute. Plaintiffs were, at all relevant times, "borrowers" as defined by Civil Code § 2920.5. At no point at least 30 days prior to recording the Notice of Default did Bayview contact Plaintiffs, within the meaning of this term and the statutory requirements, in person or by phone in order to assess their financial situation and explore options for them to avoid foreclosure.

47. At no point at least 30 days prior to recording the Notice of Default, and during the initial contact, did Bayview advise Plaintiffs of their right to request a subsequent meeting, which, if requested, would be scheduled within 14 days.

48. At no point at least 30 days prior to recording the Notice of Default, and during such initial contact or a subsequent meeting, did Bayview provide Plaintiffs with the toll-free telephone number made available by the United States Department of Housing and Urban Development ("HUD") to find a HUD-certified housing counseling agency.

49. The Notice of Default was recorded before Bayview contacted, or diligently attempted to contact, Plaintiff to discuss alternatives to foreclosure as contemplated by the statute. HBOR was enacted to combat the foreclosure crisis and hold lenders accountable for exacerbating it.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

Exhibit C
000038

1    Defendants' failure to comply with the statute's pre-NOD outreach procedures undermines the

2    intent of the statute and serves to perpetuate the servicer misconduct and foreclosure abuses

3    specifically targeted by the HBOR legislation.

4  50. In addition, noncompliance with the statute renders the Notice of Default invalid and void as a

5    matter of law.  A trustee's sale cannot proceed unless and until Defendants record a notice of

6    default that contains a declaration that is accurate and supported by competent and reliable

7    evidence.  If the declaration is false, then the notice of default itself is false, since the

8    declaration must be attached to the notice.  Moreover, the Notice of Default is invalid, since

9    contact, or diligent effort to contact, is a statutory prerequisite to filing the Notice of Default.

10  51. As a result of Defendants' wrongful acts and omissions, Plaintiff has incurred costs associated

11    with the improper foreclosure action in that Plaintiff has been precluded the procedural

12    protections afforded borrowers by the statute and now face the imminent foreclosure of the

13    Subject Property.  Plaintiff has sought, and continues to seek, an assessment of their financial

14    situation and consideration for foreclosure alternatives offered by, or through, Bayview, as

15    contemplated by the provisions of HBOR.

16  52. Pursuant to Civil Code §§ 2924.12 and 2924g, Plaintiff seek an order enjoining Defendants

17    from proceeding with foreclosure unless and until Defendants have corrected and remedied their

18    material violations of Civil Code § 2923.55.

19                  **VII.**

20            **SECOND CAUSE OF ACTION**

21      **VIOLATIONS OF CAL. CIVIL CODE §2923.6**

22           **(AS TO ALL DEFENDANTS)**

23  53. Plaintiff re-alleges and incorporates by reference all paragraphs above, as though fully set forth

24    in this cause of action.

25  54. Pursuant to Civil Code § 2924.15, Civil Code § 2923.6 applies only to mortgages or deeds of

26    trust that are secured by owner-occupied residential real property containing no more than four

27    (4) dwelling units. For these purposes, "owner-occupied" means that the property is the

28    principal residence of the borrower as indicated in loan documents. Here, the Property contains

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

9

Exhibit C
000039

1  no more than four (4) dwelling units, and the Property is Plaintiff's principal residence, as

2  indicated in Plaintiff's loan documents. Therefore, Plaintiff may bring this action for possession

3  under Civil Code § 2923.6.

4  55. California Civil Code §2923.6(c) dictates that once a borrower submits a complete application

5  for a first lien loan modification offered by, or through, the borrower's mortgage servicer, the

6  servicer **SHALL NOT RECORD** a Notice of Default or Notice of Sale, **OR CONDUCT** a

7  trustee's sale, **while the application is pending, *and*** until any of the following occurs:

8  a.  The mortgage servicer makes a written determination that the borrower is not eligible for

9  a foreclosure prevention alternative ***and*** any appeal period has expired;

10  b.  The borrower does not accept an offered foreclosure prevention alternative within

11  fourteen (14) days of the offer; ***or***

12  c.  The borrower accepts a written foreclosure prevention alternative, but defaults on the

13  loan modification or otherwise breaches his/her obligations under the foreclosure

14  prevention alternative.

15  56. In this case, in or around November 2016 and March 2017, Defendants executed and recorded

16  the Notice of Default and  Notice of Trustee Sale, while he was clearly in review for a loan

17  modification, against the subject property. **(Exhibit A and B).**

18  57. Pursuant to Civil Code §2923.6(g), the mortgage servicer shall not be obligated to evaluate

19  applications from borrowers who have already been evaluated or afforded a fair opportunity to

20  be evaluated, unless there has been a material change in the borrower's financial circumstances

21  since the date of the borrower's previous application and that change is documented by the

22  borrower and submitted to the mortgage servicer.

23  58. As alleged herein, Plaintiff has not been fairly evaluated for a loan modification ***and*** there has

24  been a **material change** in Plaintiff's financial circumstances, which change Plaintiff

25  documented and submitted to BAYVIEW. Accordingly, Plaintiff provided documentation

26  evidencing the material change in the financial circumstances by providing his financial

27  documents, but not limited to his current bank statements and a hardship letter, via fax to

28  BAYVIEW as instructed in or around June 2017 which demonstrated an increase in his

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

10

Exhibit C
000040

1   household income.

2   59. However, before providing Plaintiff with a written decision, Defendants are proceeding with a

3   sale date for July 17, 2017. **This is a clear violation of Civil Code § 2923.6(g).**

4   60. Pursuant to Civil Code §2923.6(g), Bayview is obligated to evaluate Plaintiff's application for

5   any and all foreclosure prevention alternatives, including, but not limited to, a loan

6   modification, and **Defendants must cease all foreclosure activity on the Property**.

7   61. Moreover, pursuant to Civil Code § 2923.6(f), following the denial of a first lien loan

8   modification application, the mortgage servicer shall send a written notice to the borrower

9   identifying the reasons for denial, including the following: (1) the amount of time from the date

10   of the denial letter in which the borrower may request an appeal of the denial of the first lien

11   loan modification and instructions regarding how to appeal the denial; (2) if the denial was

12   based on investor disallowance, the specific reasons for the investor disallowance; (3) if the

13   denial is the result of a net present value calculation, the monthly gross income and property

14   value used to calculate the net present value and a statement that the borrower may obtain all of

15   the inputs used in the net present value calculation upon written request to the mortgage

16   servicer; (4) if applicable, a finding that the borrower was previously offered a first lien loan

17   modification and failed to successfully make payments under the terms of the modified loan;

18   and (5) if applicable, a description of other foreclosure prevention alternatives for which the

19   borrower may be eligible, and a list of the steps the borrower must take in order to be considered

20   for those options. If the mortgage servicer has already approved the borrower for another

21   foreclosure prevention alternative, information necessary to complete the foreclosure prevention

22   alternative.

23   62. Furthermore, pursuant to Civil Code § 2923.6(e), if the borrower's application for a first lien

24   loan modification is denied, the mortgage servicer or trustee **SHALL NOT RECORD** a notice

25   of default or, if a notice of default has already been recorded, record a notice of sale **OR**

26   **CONDUCT** a trustee's sale until the later of: (1) Thirty-one days after the borrower is notified

27   in writing of the denial. (2) If the borrower appeals the denial pursuant to subdivision (d), the

28   later of 15 days after the denial of the appeal or 14 days after a first lien loan modification is

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

11

Exhibit C
000041

1   offered after appeal but declined by the borrower, or, if a first lien loan modification is offered

2   and accepted after appeal, the date on which the borrower fails to timely submit the first

3   payment or otherwise breaches the terms of the offer.

4   63. Therefore, Plaintiff was deprived of the statutory rights and protections under the HBOR,

5   without first providing Plaintiff a written denial as well as the opportunity to appeal the denial

6   and wait the statutorily mandated time before proceeding with foreclosure, **in blatant violations**

7   **of Civil Code § 2923.6(e) and (f).**

8   64. The intent of the California Legislature in enacting the HBOR was to address the consequences

9   of the subprime mortgage crisis leading to declining real property values and historic levels of

10   foreclosure. Given the vast and devastating impact of the crisis, the objective of the HBOR was

11   to make sure lenders, loan servicers, and their agents were communicating and working with

12   borrowers in default to assess the borrowers' financial situation and discuss foreclosure

13   alternatives before a foreclosure is initiated by recording a notice of default. The intent of the

14   legislature is clear and the requirements that it has imposed are by no means arbitrary.

15   65. Defendants' numerous and repeated failures to comply with Civil Code §2923.6 directly

16   undermines the intent of the statute. Defendants' failure to adhere to the statute renders the

17   HBOR essentially meaningless and, if the statue is not enforced, it will serve to perpetuate a

18   cycle that results in far too many homeowners being rendered helpless. As a result, Defendants

19   are liable to Plaintiff for any and all statutory and/or actual damages which have resulted from

20   their conduct.

21   66. Plaintiff has incurred costs associated with the foreclosure action since its commencement and

22   has sought an assessment of his financial situation and consideration for a first lien loan

23   modification and any other foreclosure prevention programs offered by and through the

24   mortgage servicer pursuant to the provisions of the HBOR.

25   67. As a result of the above-described wrongful acts and omissions, Plaintiff has been precluded

26   from the rights granted to them by Civil Code § 2923.6.

27   68. As a result of Defendants' wrongful acts and omissions, Defendants are liable to Plaintiff for

28   any and all statutory and/or actual damages which have resulted from their conduct. If

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

Exhibit C
000042

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

1   Defendants fail to correct their violations, Plaintiff is entitled to actual damages, attorneys' fees,

2   and treble damages for Defendants' material and uncorrected violations of Civil Code § 2923.6.

3   **VIII.**

4   **THIRD CAUSE OF ACTION**

5   **VIOLATIONS OF BUSINESS AND PROFESSIONS CODE §17200**

6   **(AS TO ALL DEFENDANTS)**

7   69. Plaintiff re-alleges and incorporates by reference all paragraphs above, as though fully set forth

8   in this cause of action.

9   70. Plaintiffs bring this action against Defendants pursuant to California Business and Professions

10   Code § 17200, *et seq.,* referred to as the Unfair Competition Law (the "UCL").

11   71. California Business and Professions Code § 17200 prohibits "any unlawful, unfair or fraudulent

12   business act or practice." For the reasons described herein, Defendants have engaged in unfair

13   or fraudulent business acts or practices in violation of Bus. and Prof. Code §17200, *et. seq.*

14   72. The Court has jurisdiction over this action pursuant to California Bus. and Prof. Code § 17200,

15   *et seq.,* specifically Bus. and Prof. Code § 17203, which provides that any person who engages,

16   has engaged, or proposes to engage in unfair competition may be enjoined in any court of

17   competent jurisdiction; and the court may make such orders or judgments, including the

18   appointment of a receiver, as may be necessary to prevent the use or employment by any person

19   of any practice which constitutes unfair competition, or as may be necessary to restore to any

20   person in interest any money or property, real or personal, which may have been acquired by

21   means of such unfair competition; and Bus. and Prof. Code § 17204, which provides for actions

22   for any relief pursuant to the Unfair Competition Law ("UCL") to be prosecuted exclusively in a

23   court of competent jurisdiction by any board, officer, person, corporation or association, or by

24   any person acting for the interests of itself, its members or the general public.

25   73. As alleged herein, Defendants engaged in deceptive business practices in connection with

26   servicing Plaintiff's mortgage loan, processing Plaintiff's requests for an alternative to

27   foreclosure, initiating and proceeding with foreclosure of the Property, and related matters. The

28   unfair business practices committed by Defendants include, but are not limited to, the following:

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
13

Exhibit C
000043

a. Failing to implement and follow the requirements of the 2013 California Homeowner's Bill of Rights;

b. Engaging in a pattern and practice of misrepresenting to borrowers, including Plaintiff, the likelihood of qualifying for a loan modification or other work out option, and inducing borrowers to continue with the modification review process while knowing that no such permanent modification would be forthcoming despite assurances otherwise;

c. Recording the Notice of Default (**Exh. A**) with a false and defective Declaration of Compliance that would have this Court believe that BAYVIEW complied with the provisions of Civil Code § 2923.55, prior to recording the Notice of Default on the Property, when, in fact, there was no such compliance;

d. Recording the Notice of Default (**Exh. A**) without sufficiently contacting Plaintiff or attempting with due diligence to contact Plaintiff in order to assess the financial situation and explore options to avoid foreclosure, in violation of Civil Code §2923.55;

e. Violating Civil Code § 2923.6(c) and (g), by failing to fairly evaluate Plaintiff's application, or afford Plaintiff a fair opportunity to be evaluated, even after there has been a material change in Plaintiff's financial circumstances, which was documented and submitted to the mortgage servicer, Defendant BAYVIEW;

f. Engaging in negligent conduct in assessing Plaintiff's loan for foreclosure prevention alternatives, including a loan modification;

g. Making misrepresentations and false promises designed to deceive Plaintiff into thinking that they were safe from foreclosure and would be receiving a loan modification when Defendants knew or should have known that was not true;

h. Instituting improper or premature foreclosure proceedings to generate unwarranted fees and concealing the true character, quality, and nature of their assessment of marked-up fees against Plaintiff's account;

i. Misrepresenting the foreclosure status to Plaintiff regarding the property; and

j. Attempting to Foreclose on the Property without the legal authority or just cause to do so.

74. Defendants' omissions of material facts, as hereinabove alleged, constitute "unlawful" practice

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

14

Exhibit C
000044

1   because they violate Title 18 United States Code §§ 1341, 1343, and 1962, California Civil Code

2   §§ 1572, 1573, 1709, 1710, and 1711, and the common law.

3   75. Defendants' acts and practices, as hereinabove alleged, constitute "unfair" business acts under

4   Bus. and Prof. Code §17200, *et seq.*, in that said acts and practices offend public policy and are

5   substantially injurious to Plaintiff and all consumers. Said acts and practices have no utility

6   whatsoever, much less sufficient utility to outweigh the substantial harm to Plaintiff, other

7   consumers, and potential homeowners.

8   76. These violations were and remain to be a matter of Defendants' standard corporate policy, and

9   constitute a consistent pattern and practice of unlawful corporate behavior. Defendants' actions

10   are against public policy, as the legislature enacted the HBOR as an emergency act to slow the

11   foreclosure process so that borrowers have a meaningful opportunity to avoid foreclosure.

12   77. Defendants knew, or by the exercise of reasonable care, should have known, that the statements

13   and misrepresentatives made by their representatives as alleged herein were violations of public

14   policy, Civil Code §§ 2923.6, 2924.10, and other common law.

15   78. Defendants' acts and practices, as hereinabove alleged, constitute "fraudulent" business acts

16   under § 17200 in that said acts and practices are likely to deceive the public and effect

17   consumers' legal rights and obligations.  Defendants' acts, including, but not limited to, active

18   deception, falsifying and/or failing to deliver material documents, and concealment of

19   information, serve to prevent consumers from exercising rights to which they are entitled.

20   79. Moreover, in the course and conduct of their loan servicing and collection, Defendants omitted a

21   true itemization that identifies the nature of each fee, and it failed to disclose the nature of the

22   charges and fees assessed. Defendants concealed the fact that the category identified as

23   "Miscellaneous Fees" or "Other Charges" reflects marked-up and/or unnecessary fees that were

24   never incurred by Defendants. Relying on Defendants, Plaintiff and members of the general

25   public believe they are obligated to pay the amounts specified in Defendants' communications

26   for default-related services.

27   80.  Plaintiff relied on the reasonable expectation that Defendants complied with the plain meaning

28   of the mortgage agreement, Notes, Security Instruments, court orders, and confirmed plans, and

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

15

Exhibit C
000045

as a result, Plaintiff relied on Defendants' disclosures about the fees on his statements, reasonably believing the "Other Charges," "Other Fees" or "Miscellaneous Fees" to be valid charges that were not unlawfully marked-up and/or unnecessary. Indeed, to trick borrowers into a sense of trust and to dissuade them from challenging Defendants' unlawful fee assessments, Defendants conceal their scheme by telling borrowers, in statements and other documents, that such fees are "allowed by borrowers' Note and Security Instrument," or that they are "in accordance with the terms of your mortgage." Had the true nature of the fees been disclosed to Plaintiff, they would have been aware of the mark-ups and unnecessary nature of the fees, and Plaintiff would have disputed the charges, not paid them.

81. As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent conduct alleged herein, Plaintiff has lost equity in the Property. Defendants' charging of marked up and excess fees has resulted in damage to Plaintiff's tangible interest in the Property. This loss of equity, which should be credited back to Plaintiff, **constitutes a loss of money.**

82. As a direct and proximate result of Defendants' unlawful, unfair and fraudulent conduct, Defendants wrongfully foreclosed on the Property causing Plaintiff to lose title to, and interest in, the Property and the imminent eviction of Plaintiff and her family from her home. Such eviction will cause Plaintiff to suffer further immediate and irreparable injury, loss and damage. Further, Defendants' wrongful foreclosure of the Property caused Plaintiff to lose her equity in the home. This loss of equity, which should be credited back to Plaintiff, constitutes a loss of money.

83. Due to Defendants' unlawful, unfair, and fraudulent business practices, Plaintiff has suffered a substantial ascertainable loss and, therefore, pursuant to Business and Professions Code §§17203 and §17204, Defendants should be enjoined from continuing such practices.

84. Defendants' unfair and deceptive business acts or practices have caused a direct and proximate injury to Plaintiff and the general public. Plaintiff is entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendants as a result of such business acts or practices.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

Exhibit C
000046

85.  In addition to the relief requested in the Prayer below, Plaintiff seeks the imposition of a constructive trust over, and restitution of, the monies collected and realized by Defendants.

## IX.

## FOURTH CAUSE OF ACTION

## NEGLIGENCE

## (AS TO BAYVIEW)

86.  Plaintiff re-alleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

87.  BAYVIEW, acting as Plaintiff's lender, servicer and beneficiary, undertook a review of Plaintiff's Loan for modification and having done so it owed Plaintiff the duty to exercise reasonable care in processing and reviewing their applications for loan modifications.

88.  BAYVIEW breached its duty by (1) failing to review Plaintiff's applications in a timely manner, (2) misrepresenting the status of Plaintiff's loan modification applications; and (3) initiating and continuing foreclosure in violation of public policy and statutory restrictions on dual-track foreclosures.

89.  Plaintiff's complete loan modification application was in process in 2016 and 2017. BAYVIEW received all the documents and information Plaintiff gave BAYVIEW as part of the loan modification review process, thus, Plaintiff had a complete loan modification application in review and BAYVIEW undertook a review of Plaintiff's application.

90.  The transaction was intended to affect Plaintiff and it was entirely foreseeable that failing to timely and carefully process the loan modification applications could result in significant harm to Plaintiff in that the decision on Plaintiff's application would determine whether they could keep the home.   In addition, Plaintiff's credit rating would be adversely affected, thereby making it more difficult for Plaintiff to secure alternative financing to cure the default.

91.  The injury to Plaintiff is certain.  The mishandling of the documents deprived Plaintiff of the possibility of obtaining loss mitigation assistance and Plaintiff now faces imminent foreclosure and eviction from their family home.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

Exhibit C
000047

92. There is a close connection between BAYVIEW's conduct and Plaintiff's injuries. To the extent Plaintiff otherwise qualified and would have been granted a modification, BAYVIEW's conduct in misdirecting the papers submitted by Plaintiff directly precluded the loan modification application from being timely processed. Plaintiff now faces imminent foreclosure as a result of BAYVIEW initiating and continuing foreclosure action in violation of HBOR's restrictions on dual-tracking.

93. The policy of preventing future harm favors imposing a duty of care on an entity in Bayview's position. In fact, this is evidenced by the fact that the State of California, through legislation, has enacted the Homeowner's Bill of Rights in an effort to prevent future harm from unnecessary and wrongful foreclosures.

94. As a direct and proximate result of the negligence and carelessness of BAYVIEW and its representatives Plaintiff has suffered, and continues to suffer, general and special damages in an amount to be determined at trial.

## PRAYER

**WHEREFORE, Plaintiff prays for judgment against each Defendant, jointly and severally, as follows:**

1. For damages sustained by Plaintiff due to Defendants' wrongful acts in excess of the jurisdictional limits in an amount to be proven at trial;

2. For disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

3. Pursuant to Bus. & Prof. Code §17200, *et seq.*, that all Defendants, their employees, agents, representatives, successors, assigns, and all persons who act in concert with them, be permanently enjoined from making any false or misleading statements or falsely reporting negative credit to reporting agencies, and from selling the foreclosed property on an unlawfully procured debt;

4. Pursuant to Bus. & Prof. Code §17200, *et seq.*, that this Court make such orders or judgments necessary to prevent the use or employment by any Defendant of any act which violates

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

18

Exhibit C
000048

§17200, *et seq.;* and to restore to any person in interest, any money or property, real or personal, which may have been acquired by means of any such act;

5. For disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

6. For interest on the sum at the rate of 10% per annum;

7. For punitive damages against Defendants due to their intentional, reckless or willful wrongful acts;

8. For any and all relief granted under California Civil Code § 2924.12(b);

9. For reasonable attorney's fees and costs of suit, as allowed by law, and all other relief granted under Civil Code §2924.12(i);

10. For injunctive relief as set forth herein; and

11. For such other and further relief as this Court deems just and proper.

Dated: July 6, 2017          **LAW OFFICES OF JOSEPH R. MANNING, JR.**
                             **A PROFESSIONAL CORPORATION**

                             By: _____
                                 Joseph R. Manning Jr., Esq.
                                 Attorneys for Plaintiff

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

19

Exhibit C
000049

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit A**

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
20

Exhibit C
000050

RECORDING REQUESTED BY: ·
· ServiceLink
WHEN RECORDED MAIL TO:

Clear Recon Corp.
4375 Jutland Drive Suite 200
San Diego, California 92117
866-931-0036

DOC# 2016-0656132

Nov 30, 2016  03:40 PM
OFFICIAL RECORDS
Ernest J. Dronenburg, Jr.,
SAN DIEGO COUNTY RECORDER
FEES:  $27.00

PAGES: 4

T.S. No.: 048253-CA
APN: 126-490-07-00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Property Address: 30945 CUVAISON,
BONSALL, CA 92003

Title Order No.: 160271992-CA-VOI

## NOTICE OF DEFAULT

### Pursuant to CA Civil Code 2923.3

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

**NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO**
**TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP**
**LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY**

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,**
and you may have legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $646,252.47 as of 11/28/2016, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the

Page 1 of 3

CRC NOD 09122014

Exhibit C
000051

Branch :WRC,User :3027                    Comment:                                      Station Id :LZ19

Trustee Sale No.: 048253-CA   Title Order No.: 160271992-CA-VOI

beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE (CWALT 2006-OA12)
C/O Clear Recon Corp.
4375 Jutland Drive Suite 200
San Diego, California 92117
Phone: 858-750-7600

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.  Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN:  CLEAR RECON CORP. is either the original trustee, the duly appointed substituted trustee or the designated agent of the holder of the beneficial interest under a deed of trust dated 6/23/2006, executed by HILARIO GONZALEZ, AND DAWN MELKUS-GONZALEZ, HUSBAND AND WIFE AS COMMUNITY PROPERTY WITH RIGHTS OF SURVIVORSHIP, as Trustor, to secure certain obligations in favor of the beneficiary thereunder, recorded 7/6/2006, as Instrument No. 2006-0476641, of Official Records in the Office of the Recorder of  San Diego County, California, encumbering the land as fully described on said Deed of Trust

Page 2 of 3

CRC NOD 09122014

Exhibit C
000052

Branch :WRC,User :3027                          Comment:                          Station Id :LZI9

Trustee Sale No.: 048253-CA  Title Order No.: 160271992-CA-VOI

That a breach of, and default in, the obligations for which such Deed of Trust is security
has occurred in that payment has not been made of:

Installment of Principal and Interest plus impounds and/or advances which became due on
7/1/2009 plus late charges, and all subsequent installments of principal, interest, balloon
payments, plus impounds and/or advances and late charges that become payable.

That by reason thereof, THE BANK OF NEW YORK MELLON FKA THE BANK OF
NEW YORK, AS TRUSTEE (CWALT 2006-OA12), the present beneficiary under such
Deed of Trust has deposited with said trustee such Deed of Trust and all documents
evidencing obligations secured thereby and has declared and does hereby declare all sums
secured thereby immediately due and payable and has elected and does hereby elect to
cause the trust property to be sold to satisfy the obligations secured thereby.

CLEAR RECON CORP.

Date Executed:  11/28/16     BY: _____

EDWARD JAMIR , Authorized Signor

CLEAR RECON CORP.
4375 Jutland Drive Suite 200
San Diego, California 92117

Page 3 of 3

CRC NOD 09122014

SAN DIEGO,CA                       Page 3 of 4            Printed on 6/26/2017 11:30:01 AM
Document: ND 2016.656132

Exhibit C
000053

Branch :WRC,User :3027                                Comment:                                         Station Id :LZI9

## Declaration of Mortgage Servicer Pursuant to
## Civil Code §2923.55(c)

Borrower(s): HILARIO GONZALES, DAWN MELKUS-GONZALES
Mortgage Servicer: Bayview Loan Servicing, LLC
Property Address: 30945 CUVAISON BONSALL, CA 92003
Loan No.:  1108218
T.S. No.:

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. ☒ The mortgage servicer has contacted the borrower pursuant to California Civil Code § 2923.55(b) (2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have; passed since the initial contact was made.

2. ☐ The mortgage servicer has tried with due diligence to contact the borrower(s) as required by California Civil Code § 2923.55(f) (1) and § 2923.55(f) (3)-(5). The telephone contact requirements under § 2923.55(f) (2) were not attempted pursuant to the borrower's previously request for cease communication. No contact has been made despite such due diligence. The due diligence efforts were satisfied on _____.

3. ☐ Despite the exercise of due diligence pursuant to California Civil Code § 2923.55(f), the Mortgage servicer has been unable to contact the borrower to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

4. ☐ No contact was required by the mortgage servicer because the individual(s) did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

5. ☐ The requirements of Cal. Civil Code § 2923.55 do not apply because the loan is not secured by a first lien mortgage or first deed of trust that secures a loan, or that encumbers real property, described in Civil Code § 2924.15(a).

6. ☐ The requirements of Cal. Civil Code § 2923.55 do not apply because:

   a._____ The secured property is non-owner occupied.

   b._____ The secured property is commercial or vacant land.

   c._____ The secured property is exempt from due diligence, the borrower is deceased.

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Bayview Loan Servicing, LLC

Dated: 11/16/2016                              By: _____

                                              GREGORY HARRISON
                                              State Declaration Processor Loss Mitigation - QA

Exhibit C
000054

1
2
3
4
5
6
7
8
9
10
11
12
13

**Exhibit B**

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

Exhibit C
000055

DOC# 2017-0108177

Mar 08, 2017   04:05 PM
OFFICIAL RECORDS
Ernest J. Dronenburg, Jr.,
SAN DIEGO COUNTY RECORDER
FEES:  $24.00

PAGES: 3

RECORDING REQUESTED BY
And When Recorded Mail To:

**CLEAR RECON CORP.**
**4375 Jutland Drive Suite 200**
**San Diego, California 92117**
**Phone: 866-931-0036**

T.S. No. 048253-CA
APN: 126-490-07-00

Space Above This Line For Recorder's Use

# NOTICE OF TRUSTEE'S SALE

### Pursuant to CA Civil Code 2923.3
### NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

### IMPORTANT NOTICE TO PROPERTY OWNER:

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 6/23/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER

On 4/3/2017 at 1:00 PM, CLEAR RECON CORP., as duly appointed trustee under and pursuant to Deed of Trust recorded 7/6/2006, as Instrument No. 2006-0476641, of Official Records in the office of the County Recorder of San Diego County, State of **CALIFORNIA** executed by:

**HILARIO GONZALEZ, AND DAWN MELKUS-GONZALEZ, HUSBAND AND WIFE AS COMMUNITY PROPERTY WITH RIGHTS OF SURVIVORSHIP**

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK DRAWN ON A STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL CREDIT UNION, OR A CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN ASSOCIATION, SAVINGS ASSOCIATION, OR SAVINGS BANK SPECIFIED IN SECTION 5102 OF THE FINANCIAL CODE AND AUTHORIZED TO DO BUSINESS IN THIS STATE:

**OUTSIDE THE MAIN ENTRANCE AT THE SUPERIOR COURT NORTH COUNTY DIVISION, 325 S MELROSE DR., VISTA, CA 92081**

all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State described as:

**PARCEL 1:LOT 33 OF COUNTY OF SAN DIEGO TRACT NO. 5037-3, ACCORDING TO MAP. THEREOF NO. 14899, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY NOVEMBER 3, 2004. MORE COMPLETELY DESCRIBED IN ATTACHED EXHIBIT A.**

The street address and other common designation, if any, of the real property described above is purported to be:
**30945 CUVAISON**
**BONSALL, CA 92003**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Page 1 of 2

CRC NOS 012914

Exhibit C
000056

Branch :WRC,User :3027                     Comment:                              Station Id :LZI9

T.S. No. 048253-CA

## NOTICE OF TRUSTEE'S SALE

Said sale will be held, but without covenant or warranty, express or implied, regarding title, possession, condition, or encumbrances, including fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to pay the remaining principal sums of the note(s) secured by said Deed of Trust.  The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is:  **$1,582,852.13**

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

**NOTICE TO POTENTIAL BIDDERS:**  If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call **(844) 477-7869** or visit this Internet Web site **WWW.STOXPOSTING.COM,** using the file number assigned to this case 048253-CA. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

FOR SALES INFORMATION: (844) 477-7869

Date Executed:  ___5|2|17___          **CLEAR RECON CORP.**

                                        _CRatzloff_
                                        (Authorized Signature

                                        CHRISTINE RATZLAFF
                                        **CLEAR RECON CORP.**
                                        **4375 Jutland Drive Suite 200**
                                        **San Diego, California 92117**

CRC NOS 012914

SAN DIEGO,CA                            Page 2 of 3                   Printed on 6/26/2017 11:30:01 AM
Document: NT 2017.108177

Exhibit C
000057

**EXHIBIT A**
**LEGAL DESCRIPTION**
**REF. NO. 048253-CA**
PARCEL 1:
LOT 33 OF COUNTY OF SAN DIEGO TRACT NO. 5037-3, ACCORDING TO MAP, THEREOF NO.
14899, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY NOVEMBER
3, 2004. EXCEPT THEREFROM FOR THE BENEFIT OF ALL OWNERS WITHIN AGUACATE RANCH
COMMUNITY ASSOCIATION, A CALIFORNIA NONPROFIT MUTUAL BENEFIT CORPORATION, A
NONEXCLUSIVE EASEMENT ON AND OVER THE COMMON AREA PRIVATE STREETS AND ENTRY
GATE, AS DEFINED AND DEPICTED IN THE DECLARATION HEREINAFTER REFERRED TO, FOR
INGRESS, EGRESS, AND PRIVATE ROAD PURPOSES, INCLUDING THE RIGHT TO ACCESS AND
MAINTAIN SAID ROAD, SUBJECT TO THE TERMS AS MORE PARTICULARLY SET FORTH IN THE
DECLARATION HEREINAFTER REFERRED TO. EXCEPT UNTO GRANTOR, ITS SUCCESSORS AND
ASSIGNS, TOGETHER WITH THE RIGHT TO GRANT AND TRANSFER ALL OR A PORTION OF THE
SAME, (A) ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS, NATURAL GAS
RIGHTS, AND OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN, GEOTHERMAL STEAM
AND ALL PRODUCTS DERIVED FROM ANY OF THE FOREGOING, THAT MAY BE WITHIN OR
UNDER THE PARCEL OF LAND HEREINABOVE DESCRIBED, TOGETHER WITH THE PERPETUAL
RIGHT OF DRILLING, MINING, EXPLORING AND OPERATING THEREFOR AND STORING IN AND
REMOVING THE SAME FROM SAID LAND OR ANY OTHER LAND, INCLUDING THE RIGHT TO
WHIPSTOCK OR DIRECTIONALLY DRILL AND MINE FROM LANDS OTHER THAN THOSE
HEREINABOVE DESCRIBED, OIL OR GAS WELLS, TUNNELS AND SHAFTS INTO, THROUGH OR
ACROSS THE SUBSURFACE OF THE LAND HEREINABOVE DESCRIBED, AND TO BOTTOM SUCH
WHIPSTOCKED OR DIRECTIONALLY DRILLED WELLS, TUNNELS AND SHAFTS UNDER AND
BENEATH OR BEYOND THE EXTERIOR LIMITS THEREOF, AND TO REDRILL, RETUNNEL, EQUIP,
MAINTAIN, REPAIR, DEEPEN AND OPERATE ANY SUCH WELLS OR MINES WITHOUT, HOWEVER,
THE RIGHT TO DRILL, MINE, STORE, EXPLORE AND OPERATE THROUGH THE SURFACE OR THE
UPPER 500 FEET OF THE SUBSURFACE OF THE LAND HEREINABOVE DESCRIBED; AND (B) ANY
AND ALL WATER, WATER RIGHTS OR INTERESTS THEREIN APPURTENANT OR RELATING TO
THE LAND HEREINABOVE DESCRIBED, OR OWNED OR USED BY GRANTOR IN CONNECTION
WITH OR WITH RESPECT TO THE LAND (NO MATTER HOW ACQUIRED BY GRANTOR), WHETHER
SUCH WATER RIGHTS SHALL BE RIPARIAN, OVERLYING, APPROPRIATE,
LITTORAL, PERCOLATING, PRESCRIPTIVE, ADJUDICATED, STATUTORY OR CONTRACTUAL,
TOGETHER WITH THE RIGHT AND POWER TO EXPLORE, DRILL, REDRILL, REMOVE AND STORE
THE SAME FROM OR IN THE LAND OR TO DIVERT OR OTHERWISE UTILIZE SUCH WATER,
RIGHTS OR INTERESTS ON ANY OTHER PROPERTY, WHETHER OR NOT SUCH OTHER
PROPERTY IS OWNED OR LEASED BY GRANTOR; BUT WITHOUT, HOWEVER, ANY RIGHT TO
ENTER UPON THE SURFACE OF THE LAND IN THE EXERCISE OF SUCH RIGHTS. FURTHER
RESERVING UNTO GRANTOR, ITS SUCCESSORS AND ASSIGNS, TOGETHER WITH THE RIGHT
TO GRANT AND TRANSFER ALL OR A PORTION OF SAME, EXCEPT AS GRANTED HEREBY,
EASEMENTS AND RIGHTS RESERVED BY GRANTOR AS DECLARANT AND OWNER IN THE
DECLARATION HEREINAFTER REFERRED TO.
PARCEL 2:
EASEMENTS AND RIGHTS FOR THE BENEFIT OF GRANTEE AS SET FORTH IN THE
DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS RECORDED
DECEMBER 12, 2001 AS INSTRUMENT NO. 2001-0912649, AND SUPPLEMENTARY
DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS RECORDED
MARCH 29, 2005 AS INSTRUMENT NO. 2005-0252122, BOTH OF OFFICIAL RECORDS

Exhibit C
000058